IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                          CRIMINAL ACTION NO. 2:20-cr-00190

BRIAN KEITH DUNNIGAN, JR.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant's Motion to Suppress Evidence* (Document 49) and *Memorandum in Support of Defendant's Motion to Suppress Evidence* (Document 50), the *Defendant's Motion in Limine to Exclude Other Bad Acts Evidence at Trial* (Document 51), the *Response of the United States to Defendant's Motion to Exclude Other Bad Acts Evidence at Trial* (Document 57), the *United States' Response in Opposition to Defendant's Motion to Suppress Evidence* (Document 58), the *Defendant's Reply to the United States' Response of Defendant's Motion to Suppress Evidence* (Document 59), the *Defendant's Reply to the Government's Response to Defendant's Motion in Limine to Exclude Other Bad Acts Evidence at Trial* (Document 60), and all attendant documentation. For the reasons stated herein, the Court finds that the motion in limine should be granted in part and denied in part and the motion to suppress should be granted in part and denied in part, as more fully set forth herein.

# FACTS[1]

On October 4, 2020, the Defendant was stopped by Sgt. Troy Vanhorn of the Charleston Police Department while driving a Chrysler PT Cruiser with a cracked windshield and an expired registration sticker. The Defendant stepped out of his car as the officer approached and two other police officers arrived to assist. The Defendant submitted to a pat down search for weapons. Patrolman Smith felt the outline of a pill bottle in the Defendant's pocket while patting him down. Patrolman Smith asked for permission to remove the pill bottle, but the Defendant declined. Despite the Defendant's lack of consent, Patrolman Smith removed the pill bottle. Its label indicated a prescription for morphine sulphate pills in the Defendant's mother's name. Patrolman Smith opened the bottle and found fifty-nine suspected Xanax pills. The Defendant was then questioned about whether there were any firearms in the car. He stated there was a pistol underneath the driver's seat, and a Glock .380 handgun was recovered and seized by the officers. The Defendant was subsequently arrested on a state criminal complaint, but the charge was later dismissed.

On October 23, 2020, Patrolman Tyler Harper applied to Kanawha County Magistrate Michael A. Sisson for a search warrant of the Defendant's apartment located on Park Avenue in Charleston, West Virginia. The warrant application included an affidavit from Patrolman Harper, detailing what he learned about the Defendant's alleged drug trafficking activities. The affidavit included information about the October 4, 2020 traffic stop, including seizure of the pill bottle containing suspected Xanax and the Glock handgun recovered from the car.

---

1 The facts are uncontested by the parties, so the Court finds that a hearing on the matter would not be helpful.

Patrolman Harper also included information about a Snapchat social media account that allegedly indicated the Defendant was selling and distributing narcotics. In particular, the Snapchat account username "Bobby_Bitch—crazkushcyclops" posted a message stating, "if you wan [sic] put the order in on XANAX NOW IS THE TIME." (Document 49-1 at 8.) Patrolman Harper indicated that this account belonged to the Defendant. However, the affidavit included no screenshots or other information that would establish that the account belonged to the Defendant. In the affidavit, Patrolman Harper also stated that he had received additional information from Corporal Simmons, a fellow officer. According to the fellow officer, an unidentified local carrier reported that, during the past month, the Defendant received two packages from Michigan and California, which were considered source states for narcotics.

Further, Patrolman Harper included the results of a trash pull, which took place on the morning of October 23, 2020. The officers found: (1) multiple corner-cut grocery bags, (2) one vacuum sealed bag with a small amount of suspected marijuana residue, (3) an empty USPS box which had been mailed to the Defendant's apartment with a return address of California and (4) a white "Beretta" box which contained a gun lock. Patrolman Harper stated that the vacuum sealed bag and small vial had been field tested and returned positive results. Moreover, he stated that vacuum sealed bags are commonly used by drug distributors to deceive drug sniffing K-9's. No pictures were taken to document the results of this trash pull.

Kanawha County Magistrate Michael A. Sisson approved Patrolman Harper's application and issued a search warrant for the Defendant's residence on October 23, 2020. Agents executed the search warrant on that same date. The agents knocked and announced their presence and noticed the Defendant run toward the rear of the home. Officers entered the house and found the

Defendant lying on the bathroom floor. The toilet was refilling, consistent with being recently flushed. Officers searched the home and discovered: (1) a loaded Hi Point .40 caliber pistol underneath a couch cushion in the living room, (2) a Century Arms Golani Semi-Automatic Sporter Rifle, caliber 5.56, in a bedroom closet, (3) a Raven Arms .25 caliber pistol in the bedroom desk drawer and (4) a Harrington & Richardson .22 caliber pistol in the bedroom desk drawer. Officers also found fifty-seven morphine sulphate pills, approximately one gram of marijuana, and THC cartridges inside the residence. Officers also seized a Priority Mail package that was delivered by the U.S. Postal Service to the Defendant's doorstep that morning. The package was subsequently opened and discovered to contain approximately 527.7 grams of suspected Xanax pills.

At the conclusion of the search, Special Agent McKees approached the Defendant and read his *Miranda* rights, which the Defendant acknowledged and voluntarily waived. The Defendant admitted the firearms seized during the search belonged to him. He also indicated that he would not pass a drug test. The Defendant admitted to occasional heroin and prescription pill use and stated that he needed a prescription for Xanax.

As background, relevant to the pending motion in limine, Special Agent McKees had previously conducted a non-custodial interview with the Defendant in 2018. On June 13, 2017, officers executed a search warrant of the Defendant's then residence and discovered fourteen firearms, marijuana, and evidence of drug distribution. During the 2018 interview, Special Agent McKees spoke to the Defendant about the June 13, 2017 event. The Defendant admitted to marijuana, cocaine, and pill use. During the 2018 interview, Special Agent McKees explained to the Defendant that he was prohibited from owning firearms because of his drug use.

Additionally, the Charleston Police Department contacted the U.S. Postal Inspection Service regarding packages that had recently been delivered to the Defendant from California and Michigan. U.S. Postal Inspector Joshua D. Mehall subsequently placed a "Mail Watch" on all mail addressed to the Defendant's residence. On October 24, 2020, Inspector Mehall was advised that a U.S. Priority Mail package addressed to the Defendant's residence had arrived at the Charleston Post Office. The package was mailed from Michigan and was held by the Postal Inspector rather than delivered to the Defendant's address.

On October 26, 2020, the package was placed in a lineup along with four other similarly sized packages. Berkley, a Charleston drug-sniffing K-9, was brought in to sniff the packages to check for the presence of narcotics. Corporal Gaylor, Berkley's handler, notified Inspector Mehall that Berkley had alerted to the seized Priority Mail package addressed to the Defendant. On October 28, 2020, Inspector Mehall prepared an application for a federal search warrant for this package.

Inspector Mehall submitted an affidavit along with the application, summarizing the investigation of the Defendant for drug trafficking. The affidavit stated the Defendant was suspected of receiving illegal drugs through the U.S. Mail, and included the results of the package lineup, where Berkley alerted to the possible presence of narcotics in the Defendant's package. Additionally, Inspector Mehall was purportedly provided with a screen capture of a post from the Defendant's alleged Snapchat account, showing a quantity of Xanax next to a U.S. Postal Service package and a caption soliciting purchasers. The affidavit did not include a copy of the screen capture or other information about how the Snapchat account was linked to the Defendant. Inspector Mehall also stated that the Defendant had a history of receiving packages from California

5

and Michigan, which are known as source states for illegal drugs shipped to West Virginia. The results of the October 23, 2020 search of the Defendant's residence were not mentioned in the affidavit.

On October 28, 2020, United States Magistrate Judge Dwane L. Tinsley issued a search warrant for the contents of the suspected U.S. Priority Mail package. The package was opened on October 29, 2020, and contained approximately 523.45 grams of suspected Xanax pills within two separately sealed bags.

The Defendant is charged in a single-count indictment with being an unlawful drug user in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). The Defendant submitted a motion in limine seeking to exclude evidence of prior bad acts related to the June 2017 search and October 2018 interview. The Defendant also submitted a motion to suppress, seeking to exclude: (1) the suspected Xanax pills and Glock .380 handgun seized during the October 4, 2020 traffic stop, (2) a quantity of morphine sulphate pills, a gram of marijuana, eleven THC cartridges, seven firearms, and a Priority Mail package containing suspected Xanax seized from the Defendant's residence on October 23, 2020 and (3) a quantity of suspected Xanax pills found on October 29, 2020, inside an intercepted USPS Priority Mail package. The United States filed responses to the pending motions on March 10, 2021, and the Defendant filed replies on March 12, 2021. The motions are ripe for review.

## DISCUSSION

*A. Motion in Limine to Exclude Other Bad Acts Evidence*

The Defendant seeks to exclude evidence of his prior drug use and firearm possession, related to the June 2017 search and October 2018 interview with Special Agent McKees. The

Defendant argues that such evidence is extrinsic, or not related to the charged offense, and the probative value of such evidence is outweighed by the danger of unfair prejudice.

Rule 404(b) of the Federal Rules of Evidence provides that "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evidence 404(b). Such evidence may be admissible for other purposes, but the prosecutor must provide reasonable notice of the intent to offer such evidence. Fed. R. Evidence 404(b)(2). "Rule 404(b) does not limit the admission of evidence of acts intrinsic to the crime charged." *United States v. Wilson*, 624 F.3d 640, 652 (4th Cir. 2010). "Other criminal acts are intrinsic when they are 'inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged.'" *United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996) (quoting *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993)).

The Fourth Circuit has "adopted a four-prong test for assessing the admissibility of evidence under Rule 404(b): (1) it must be relevant to an issue other than character; (2) it must be necessary to prove an element of the crime charged; (3) it must be reliable; and (4) it must be admissible under Rule 403, in that the probative value of the evidence must not be substantially outweighed by its prejudicial effect." *Wilson*, 624 F.3d at 651.

The Court finds that the United States may introduce evidence related to the 2018 interview, to the extent that such evidence relates to Special Agent McKees informing the Defendant that he could not possess firearms because he was an unlawful drug user. The United States must present its case first and has the burden of proving that the Defendant knew he was an unlawful drug user when he was in possession of firearms. *Rehaif v. United States*, 139 S.Ct.

7

2191, 2194 (2019).  Thus, Agent McKees' statement to the Defendant that he was an unlawful drug user is relevant and necessary to prove the Defendant's knowledge, an element of the crime charged.  The reliability of the evidence is not challenged, and the probative value is not outweighed by its prejudicial effect.  Accordingly, the Court finds that evidence of Special Agent McKees' statement to the Defendant is admissible.

Evidence regarding the Defendant's drug use is also admissible.  The United States is required to show that the Defendant's drug use was "sufficiently consistent, prolonged, and close in time to his gun possession to put him on notice that he qualified as an unlawful user" pursuant to 18 U.S.C. § 922(g)(3).  *United States v. Sperling*, 400 F.Appx. 765, 767 (4th Cir. 2010) (citing *United States v. Purdy*, 264 F.3d 809, 812 (9th Cir. 2001)).  Thus, evidence of the Defendant's non-custodial statement regarding his use of marijuana, cocaine and pills dating back to 2017 or 2018 satisfies the four-prong test.  The evidence is necessary and relevant to prove consistent and prolonged use and its reliability is not challenged.  Further, this evidence results from the Defendant's non-custodial statement made against his interests, which carries some indicia of reliability.  Given the nature of the charged offense, its relevance and necessity to prove the elements of the crime, the Court finds the probative value of this evidence is not substantially outweighed by its prejudicial effect.

Evidence regarding the Defendant's possession of firearms and marijuana related to the June 2017 search and October 2018 interview should, however, be excluded.  This evidence, of course, is extrinsic.  Unlike evidence of Defendant's knowledge of being an unlawful user and the actual unlawful use of drugs, the possession of firearms and marijuana in 2017 is not necessary

to prove an element of the charged offense. Further, any potential probative value of the evidence seized during the 2017 search is substantially outweighed by its prejudicial effect.

Therefore, the Defendant's motion in limine is granted with respect to evidence of distribution and possession of drugs and firearms related to the 2017 search and 2018 interview, and denied with respect to evidence related to the Defendant's drug use and the statement by Special Agent McKees to the Defendant concerning the Defendant's status as an unlawful user.

*B. Motion to Suppress Evidence*

As noted above, the Defendant seeks to suppress: (1) the suspected Xanax pills and Glock .380 handgun seized during the October 4, 2020 traffic stop, (2) a quantity of morphine sulphate pills, a gram of marijuana, eleven THC cartridges, seven firearms, and a Priority Mail package containing suspected Xanax seized from the Defendant's residence on October 23, 2020, and (3) a quantity of suspected Xanax pills found inside an intercepted USPS Priority Mail package that was intercepted on October 29, 2020.

The Defendant argues that evidence obtained during the October 4, 2020 traffic stop should be suppressed because the United States did not have reasonable suspicion that the Defendant was armed and dangerous to warrant the pat down search, and the pill bottle in the Defendant's pocket was outside the scope of the plain feel doctrine announced in *Minnesota v. Dickerson*, 508 U.S. 366, 375-76 (1993). In its response, the United States notes that it "will not use the evidence of the pill bottle and firearm taken from the Defendant on October 4, 2020, and agrees any reference to that evidence should be redacted." (Document 58 at 2.) Since the United States has agreed not to use the evidence obtained during the October 4, 2020 traffic stop, it is not necessary for the Court to address the Defendant's arguments relative to this evidence.

The Defendant further argues that this Court should suppress evidence obtained during the October 23, 2020 search of the Defendant's residence, including the morphine sulphate pills, gram of marijuana, eleven THC cartridges, seven firearms, and the Priority Mail package containing suspected Xanax. Specifically, the Defendant argues that the search warrant application failed to set forth a sufficient factual basis to support a probable cause finding that controlled substances would likely be discovered at the Defendant's address. The Defendant argues that all information related to the October 4, 2020 search, including the pill bottle and firearm, should be stricken from Patrolman Harper's affidavit because such evidence was illegally seized. The Defendant argues that the remaining information in Patrolman Harper's affidavit was conclusory. Specifically, the Defendant asserts that the post soliciting Xanax purchasers on Snapchat was insufficiently linked to the Defendant, the fact that the Defendant had received packages from Michigan and California is benign, and the marijuana residue, small vial of THC oil, and the gun lock produced from the October 23, 2020 trash pull were insufficient to justify the warrant.

The Fourth Amendment protects persons from unreasonable searches and seizures. In order to search a home, a warrant is generally required. *Fernandez v. California*, 571 U.S. 292, 298 (2014). "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *United States v. Lyles*, 910 F.3d 787, 791 (4th Cir. 2018) (quoting U.S. Const. amend. IV.) In determining whether to grant an application for a warrant, a magistrate judge must analyze the "totality-of-the-circumstances" and "make a practical, common-sense determination whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S.

10

213, 238 (1983). "[T]he ultimate touchstone of the Fourth Amendment is reasonableness." *Fernandez*, 517 U.S. at 298 (internal quotation marks omitted).

In reviewing a magistrate judge's issuance of a warrant, the district court reviews the decision to determine "whether the magistrate judge had a substantial basis for finding probable cause." *Lyles*, 910 F.3d at 791. In conducting such review, the court "may not go beyond the information actually presented to the magistrate during the warrant application process." *Id.* Therefore, our review is confined to facts identical to those that were before the magistrate judge. *Id.*

The Court will review the application for warrant as though the portion related to the October 4, 2020 evidence were redacted, given the United States' agreement not to use that evidence. Therefore, the remaining facts set forth in the affidavit in support of the search warrant included information about the trash pull, the Snapchat account, and the Defendant's history of receiving packages from Michigan and California.

Trash left at the curb may be searched without a warrant, and evidence from trash pulls can serve as the basis to support a search warrant. *Lyles*, 910 F.3d at 792. Trash pulls hold evidentiary value, however, "it is anything but clear that a scintilla of marijuana residue or hint of marijuana use in a trash can should support a sweeping search of a residence" because "the open and sundry nature of trash requires that it be viewed with at least modest circumspection." *Id.* Upon review of the case law, it is clear that evidence of suspected marijuana distribution in trash in conjunction with other evidence of suspected drug distribution will support a finding of probable cause.[2]

---

2 Compare *United States v. Montieth*, 662 F.3d 660, 664-65 (4th Cir. 2011) (finding that probable cause existed where application included evidence of a tip that the defendant possessed a large amount of marijuana and a

11

In this case, officers found the following evidence in the Defendant's trash: (1) multiple corner-cut grocery bags, (2) one vacuum sealed bag with a small amount of suspected marijuana residue, (3) an empty USPS box which had been mailed to the Defendant's apartment with a return address of California and (4) a white "Beretta" box which contained a gun lock. The gun lock discovered along with marijuana residue and THC cartridges bolsters the probable cause determination in this case.

Information that the Defendant had a history of receiving packages from Michigan and California is benign in the abstract. However, viewed in light of evidence of drug distribution discovered in the trash, the history becomes more suspect. Additionally, Patrolman Harper's affidavit sets forth information that the Defendant had solicited Xanax purchasers through his Snapchat account. The affidavit set forth nothing more than a conclusory statement that the account belonged to the Defendant. The United States asserts that Patrolman Harper believed it was the Defendant's account because the Defendant made a post of his arraignment for his October 4, 2020 arrest and several images of the Defendant were posted on the account. However, Patrolman Harper failed to set forth any of that information linking the Defendant to the Snapchat account in the affidavit.

Nevertheless, the Court must view the statements set forth in the affidavit in support of the application for warrant in totality. The October 23, 2020 trash pull which revealed residue from marijuana as well as a gun lock provides some support for a finding of probable cause. Moreover,

---

trash pull revealed evidence of marijuana trafficking, including several types of packaging with marijuana residue, several burnt marijuana cigarettes, clear plastic baggies, and marijuana stems); with *Lyles*, 910 F.3d at 793 (holding that three empty packs of rolling papers, a piece of mail addressed to the home, and three marijuana stems recovered from a trash pull, without more, was insufficient to support a search warrant).

evidence that the Defendant had a history of receiving packages from both Michigan and California, which are known as source states, serves as another thumb on the scale in favor of a probable cause determination. Lastly, the Snapchat account post soliciting Xanax purchasers provides strong evidence that illegal substances are likely to be found in conjunction with that account, even though the tie to the Defendant was stated in a conclusory manner.

The Court finds that, viewing the application in its entirety, there was a sufficient basis to support a finding of probable cause to issue the search warrant for the Defendant's residence. However, even if there was not a sufficient basis to support the warrant, the good faith exception to the search warrant requirement would apply in this case since the officers had an objectively reasonable belief in the validity of the warrant. *United States v. Leon*, 468 U.S. 897, 926 (1984). Therefore, the Court finds that the motion to suppress should be denied as to the evidence seized on October 23, 2020, including the statements made by the Defendant after receiving *Miranda* warnings.

The Defendant also argues that the search of the intercepted package should be suppressed because there was not sufficient information set forth in the application for a warrant to support a finding of probable cause. In particular, the Defendant asserts that the drug detecting K-9 was not trained to detect narcotics, Inspector Mehall adopted the unsubstantiated conclusion that the Snapchat account belonged to the Defendant, that lawful packages are frequently shipped from California and Michigan and he disagrees with the characterization of those as source states.

As the Defendant noted, "The Fourth Circuit has consistently held that a positive alert by a properly trained narcotics dog will satisfy probable cause to conduct a search. *United States v. Green*, 740 F.3d 275, 282 (4th Cir. 2014); *United States v. Jeffus*, 22 F.3d 554, 557 (4th Cir. 1994);

*United States v. Robinson*, 707 F.2d 811, 815 (4th Cir. 1983)." (Document 49 at 19.) In this case, Berkley, the drug detection K-9, was properly trained and certified by the West Virginia Police Canine Association in June of 2020, only four months prior to the package line up. Berkley walked by four similarly sized parcels and alerted on the Defendant's package. That, alone, was a strong basis for a finding of probable cause to support issuance of the search warrant.[3]

However, additional information was proffered in support of the application for the warrant to search the package. Inspector Mehall outlined his experience and training in the investigation of narcotic trafficking including drug shipments from source states through the United States Mail and stated that the United States Postal Service records revealed a history of packages from California and Michigan being sent to the Defendant's address. He noted that he was provided with an image from the Defendant's Snapchat account that appeared to show a quantity of Xanax next to a United States Postal Service package and a caption soliciting purchasers. As noted above, information in the affidavit regarding the Snapchat account was somewhat conclusory. However, viewed in the context of the entire affidavit, it bolstered the other assertions in the affidavit. In totality, the affidavit set forth sufficient information to support a finding of probable cause to issue the search warrant. Therefore, the Court finds that the motion to suppress should be denied with respect to the intercepted package.

---

3 The Defendant argues that Berkley's positive alert was insufficient to serve as probable cause, because Berkley was certified to detect narcotics but was not certified to detect Xanax. The post-hoc realization that the substance inside was different from the targeted substance does not negate the probable cause that exists when a properly trained drug dog alerts to the presence of drugs within a package. See *Robinson*, 707 F.2d at 815 ("The only contention advanced by [the defendant] on appeal is that the narcotics detection dog, "Cajun," while trained to detect marijuana and cocaine, was not trained to detect Talwin or Tripelennamine. She argues that since the dog was not trained to detect these specific substances, probable cause was not established when the dog 'alerted' the packages which she had mailed. There is no merit to this argument. The detection of narcotics by a trained dog is generally sufficient to establish probable cause.").

14

**CONCLUSION**

WHEREFORE, after thorough review and careful consideration, the Court **ORDERS** that the *Defendant's Motion to Suppress Evidence* (Document 49) be **GRANTED IN PART AND DENIED IN PART** and that the *Defendant's Motion in Limine to Exclude Other Bad Acts Evidence at Trial* (Document 51) be **GRANTED IN PART AND DENIED IN PART**, as more fully set forth herein.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER:   March 22, 2021

*Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA